UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN V. PEARSON, ) | 1:11-cv-01705 GSA |
|     Plaintiff, ) ) | **ORDER REGARDING PLAINTIFF'S** |
| v. ) | **SOCIAL SECURITY COMPLAINT** |
| MICHAEL ASTRUE, Commissioner of ) Social Security, ) | |
|     Defendant. ) ) | |

## **BACKGROUND**

Plaintiff Carolyn V. Pearson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin.[1]

//
//

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. (*See* Docs. 7 & 9.)

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for benefits in September 2008, alleging disability as of April 15, 2000.  AR 178-184.  Plaintiff's application was denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ").  AR 99-110.  ALJ James P. Berry held a hearing and subsequently issued an order denying benefits on December 21, 2010, finding Plaintiff was not disabled.  AR 40-47.  On August 3, 2011, the Appeals Council denied review.  AR 4-6.

**Hearing Testimony**

ALJ Berry held a hearing on November 18, 2010, in Bakersfield, California.  Plaintiff appeared and testified; she was assisted by attorney James P. Shea.  Vocational Expert ("VE") Kenneth P. Ferra also testified.  AR 53-85.

Plaintiff was born January 16, 1951, and thus was fifty-nine years old on the date of the hearing.  AR 55.  She lives with her disabled husband and forty-one year old son.  AR 56.  Plaintiff graduated high school and took a six-month nursing course in the early seventies.  AR 56.

When she was asked what caused her to stop working in 2000, Plaintiff indicated she fell onto her hands and knees, injuring her back and shoulder.  AR 56-57.  She had been working in the jewelry department and fitting rooms in Target, but the work was too difficult.  AR 57-58.  Her work at Target also involved cashiering.  AR 58.  She was required to lift twenty to forty pounds and would stand for eight to ten hours at a time.  AR 58,  Prior to working at Target between 1996 and 2000, Plaintiff was "a landlord" at an apartment complex, handling rental applications and verifying backgrounds.  Her husband handled the maintenance as he is an electrician by trade.  She did that type of work for twenty years.  AR 59.

---

[2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    Plaintiff "live[s] in pain." AR 59. She feels pain in her hands, wrists, left shoulder, hips,
2 knees, feet and back. AR 59. The pain first became a problem in her lower spine, then in her
3 shoulder, then in her left knee, then "a hernia in her stomach," then to her hands, back down to
4 her legs and into the bottoms of her feet. AR 59-60. When she stopped working in April 2000,
5 she was afflicted by pain in her knees, shoulder and back. AR 60. Her hands began to bother her
6 in 2006. AR 60-61. Her left hip began to bother her in July of this year. AR 61.

7    Cortisone injections would help, but the pain did not go away. AR 61. She had surgery
8 on her shoulder and had physical therapy as well. The physical therapy did not relieve the pain.
9 AR 62. The prescription pain medications she was taking at the time relieved her pain
10 temporarily. AR 62. The cortisone injections in 2000 provided relief for the pain in her lower
11 back for a period of five years. AR 62-63, 74. During that period however, other problems kept
12 her from returning to work. AR 63.

13    Prior to having surgery on her left shoulder, Plaintiff was not able to lift her hand up
14 beyond table top level. AR 64. The surgery relieved some of the pain and the mobility got "just
15 a little bit better." AR 64. With regard to her left shoulder however, cortisone injections did not
16 help. Further, despite following a home exercise program and receiving physical therapy for her
17 left shoulder, neither helped. AR 63. Presently, Plaintiff cannot lift or carry a load of laundry
18 due to her shoulder pain. Reaching and grasping are problems at the level of her shoulder or
19 above. AR 65.

20    Plaintiff began getting shooting pains in her hands in 2006; it began in two fingers of her
21 left hand. Her doctor thought she had pinched a nerve and it was part of her sciatic nerve. She
22 experienced "real severe pain" in both hands. AR 66. The pain would wake her in the middle of
23 the night. AR 67. She could hold a cup of coffee, eat and feed herself with her hands. AR 67.
24 She could still dress herself and drive. AR 68. However, she can only lift two to five pounds at
25 most using both hands. AR 68. In 2007 or 2008, Plaintiff underwent surgery on both "hands."
26 AR 68. Following surgery, her ability to use her hands and fingers improved. AR 68.

1  With regard to her knees, her left bothered her more than her right. Bending and
2 squatting made the pain worse, and the pain also affected her ability to stand and walk. AR 69-
3 70. After she stopped working in 2000, she could stand for about a half an hour. AR 70. She
4 had surgery on the left knee, and it improved the pain somewhat. Her ability to stand was
5 extended to about an hour. AR 71. Today she can stand for about an hour before needing to get
6 off of her feet for a half an hour to an hour. AR 71. When she was asked to consider an eight-
7 hour work day and the amount of time she could stand during that period, Plaintiff indicated she
8 could stand for about three hours total. AR 71-72.
9  The number one problem is Plaintiff's spine. Bending, reaching, sitting and standing are
10 all affected by her spinal pain. AR 72. After she stopped working, Plaintiff could sit for twenty
11 to twenty-five minutes. AR 73. After receiving cortisone injections and physical therapy, she
12 could sit for longer periods of time, about forty-five minutes at most. Prior to the cortisone
13 injections, she could not get out of bed. AR 73-74. Although she experienced improvement
14 from the cortisone injections she received in 2000, the pain came back in January 2010. AR 74.
15 She is once again only able to sit for about twenty to twenty-five minutes at a time. AR 74.
16 When she was asked to consider an eight-hour work day and the amount of time she could sit
17 during that period, Plaintiff indicated she could sit for a total of three hours if she had received
18 cortisone injections beforehand. AR 75-76.
19  When asked about an average day in 2006, Plaintiff indicated she would cook and clean,
20 grocery shop with the assistance of her son, drive short distances to attend doctor's appointments,
21 and attend church. AR 78-80. Her son was around to help her with laundry or vacuuming. AR
22 79.
23 //
24 //
25 //
26 //
27
28

VE Ferra described Plaintiff's past work to include the following: a retail cashier, DOT[3] 211.462-014[4], light and semi-skilled with an SVP[5] of three, performed on occasion at the medium level; and, property manager, DOT 186.167-046[6], light and skilled with an SVP of seven. AR 81-82.[7]

---

[3]"DOT" refers to the Dictionary of Occupational Titles.

[4]     DOT 211.462-014 describes the cashier-check position as follows:
   Operates cash register to itemize and total customer's purchases in grocery, department, or other retail store: Reviews price sheets to note price changes and sale items. Records prices and departments, subtotals taxable items, and totals purchases on cash register. Collects cash, check, or charge payment from customer and makes change for cash transactions. Stocks shelves and marks prices on items. Counts money in cash drawer at beginning and end of work shift. May record daily transaction amounts from cash register to balance cash drawer. May weigh items, bag merchandise, issue trading stamps, and redeem food stamps and promotional coupons. May cash checks. May use electronic scanner to record price. May be designated according to items checked as Grocery Checker (retail trade).
   GOE: 07.03.01 STRENGTH: L GED: R3 M2 L2 SVP: 3 DLU: 81

[5]"SVP" refers to the Specific Vocational Preparation.

[6]DOT 186.167-046 provides the following description:
   Manages commercial, industrial, or residential real estate properties for clients: Discusses with client terms and conditions for providing management services, and drafts agreement stipulating extent and scope of management responsibilities, services to be performed, and costs for services. Prepares lease or rental agreements for lessees and collects specified rents and impounds. Directs bookkeeping functions, or credits client account for receipts and debits account for disbursements, such as mortgage, taxes, and insurance premium payments, management services costs, and upkeep and maintenance costs. Arranges for alterations to, or maintenance, upkeep, or reconditioning of property as specified in management services or lessee's agreement. Employs, or contracts for services of, security, maintenance, and groundskeeping personnel and on-site management personnel if required. Purchases supplies and equipment for use on leased properties. Directs preparation of financial statements and reports on status of properties, such as occupancy rates and dates of expiration of leases. Directs issuance of check for monies due client. May advise client relative to financing, purchasing, or selling property. Usually required to have real estate broker's license and be certified in property management. May prepare periodic inventory of building contents and forward listing to owner for review. May contact utility companies to arrange for transfer of service for tenants. May assist with eviction of tenants in compliance with court order and directions from LAWYER (profess. & kin.) 110.107-010 and owner.
   GOE: 11.11.04 STRENGTH: L GED: R4 M3 L4 SVP: 8 DLU: 89

[7]Plaintiff, while employed at Target, not only performed work as a cashier, but also performed the work of a stock clerk (DOT 222.387-058, heavy & semiskilled, SVP of four). VE Ferra indicated the hypothetical individual would be unable to perform Plaintiff's past work as a stock clerk. AR 84.

In a hypothetical question posed by the ALJ, the VE was asked to assume a hypothetical person of fifty-five years of age, with a twelfth grade education and past relevant work experience as described, who had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, with the ability to sit, stand and walk for six hours each in an eight-hour day, who could occasionally kneel, crawl, and climb ramps or stairs, but who cannot climb ropes, ladders, or scaffolds.  AR 81.  VE Ferra indicated that such an individual could perform Plaintiff's past work as a cashier and a property manager.  AR 81-82.

In a second hypothetical, the VE was asked to consider the same individual, with the following RFC: the ability to lift and carry a maximum of five pounds, stand, sit and walk for three hours total in an eight hour day, with the inability to lift the left extremity above shoulder level, and who would experience difficulty gripping or grasping bilaterally.  AR 82.  VE Ferra testified that such an individual would be precluded from performing Plaintiff's past work, and could not perform any other work in the national economy.  AR 82.

Finally, VE Ferra testified that Plaintiff's past work did not provide transferable skills to the full range of sedentary work.  AR 83.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 269-517.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 40-47.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2000, through her date last insured, March 31, 2006.  AR 42.  Further, the ALJ identified degenerative disc disease and varicose veins as severe impairments.  AR 42-43.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination of impairments did not meet or exceed any of the listed impairments.  AR 43.

1   Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to
2   lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand or walk for six
3   hours in an eight-hour workday, can occasionally climb ramps and/or stairs, kneel or crawl, but
4   cannot climb ropes, ladders or scaffolds.  AR 43-46.
5   Next, the ALJ determined that Plaintiff was capable of performing her past relevant work
6   as a retail cashier or a property manager.  AR 46-47.  Therefore, the ALJ concluded Plaintiff was
7   not disabled.  AR 47.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred by failing to properly consider the opinion of the agreed medical examiner ("AME"). (Docs. 14 & 16.)

## DISCUSSION

*Consideration of the AME's Opinion*

Plaintiff argues that the ALJ erred by affording the opinion of AME Joseph B. Alban "some weight," particularly where Dr. Alban found Plaintiff could not perform work at or above the shoulder level on the left arm, yet the RFC does not accommodate this limitation. Plaintiff contends the ALJ's failure is not harmless because her past work as a cashier and apartment manager is work that requires either constant or frequent reaching. (Doc. 14 at 9-15.) The Commissioner contends however that the ALJ did not err because he properly evaluated the opinion evidence, and in particular, properly afforded more weight to the opinion of the state agency physician. (Doc. 15 at 5-7.)

### 1. *The Legal Standards*

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another

doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### 2. *The ALJ's Findings*

ALJ Berry's relevant findings provide as follows:

> I note claimant was seen by Agreed Medical Examiner Dr. Joseph Alban in June 2003, June 2006, and April 2008 regarding her industrial injuries. In 2003, Dr. Alban noted claimant's complaints of pain in her knees, wrists, hands, left shoulder, neck, and back. X-rays showed claimant had disc degeneration at C5-6 with spur formation, left shoulder joint degeneration, normal wrists joint with no degenerative changes, early degenerative changes in the thoracic spine and lumbar spine with a small calcification at L5, and marked narrowing of the patellofemoral joints bilaterally consistent with advanced patellofemoral chondromalacia. In June 2003, Dr. Alban opined claimant was restricted from very heavy work; heavy lifting, carrying, pushing, or pulling; repetitive bending and stooping, and working at or above shoulder level. Dr. Alban further opined the claimant should not kneel, squat, run or jump. At the 2006 re-examination, Dr. Alban made no changes in his previously determined levels of industrial disability. The 2008 report of Dr. Alban states the claimant did undergo carpal tunnel surgery in June 2007, and did have improvement in her hand condition, but no changes were made in her work restrictions. I give the reports and opinion of Dr. Alban some weight as his conclusions are partially supported by the evidence as a whole.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> The state agency has reviewed the claimant's medical records and opined the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours in an 8-hour workday; has unlimited capacity to push and/or pull; can occasionally climb ramps and/or stairs, stoop, and crawl; but can never climb ladders, ropes, and/or scaffolds; and has no manipulative, visual, or environmental limitations. Social Security Ruling 96-6 requires the opinions of state agency medical consultants be treated as expert opinion evidence from nonexamining sources. I have considered their opinions and given them significant weight in rendering this decision. Their conclusions are consistent with the medical record. These medical experts have indicated that the claimant has the necessary physical and mental functional capacity to perform work.

AR 43-45, internal citations omitted.

### 3. *The Relevant Medical Evidence*

#### A. Joseph B. Alban, M.D.

Joseph B. Alban, M.D., originally performed an orthopedic evaluation of Plaintiff on June 20, 2003, following her industrial accident. AR 296-324. After noting Plaintiff's present complaints, including always present left shoulder pain, and history (AR 296-301), Dr. Alban also provided a detailed summary of the medical records he reviewed. AR 301-316. With regard

to the doctor's own physical examination and of Plaintiff's left shoulder in particular, upper extremity range of motion findings included the following:

> Shoulder Motion:
> Forward Flexion: 180° right // 150°left with pain at the shoulder
> Abduction: 180° right // 160° left with pain at the shoulder
> Internal Rotation: 55° bilaterally
> External Rotation: 60° bilaterally
> Extension: 55°right // 35° left

AR 317. X-rays performed included three views of the left shoulder. Early degeneration about the greater tuberosity and the humerus was noted to be "consistent with chronic rotator cuff tendinitis." AR 320. Dr. Alban's diagnoses included "[r]esiduals of arthroscopic decompression, left shoulder." AR 321. Dr. Alban's comment regarding Plaintiff's subjective shoulder complaints noted "[p]ain of the left shoulder is constant-slight at rest; moderate with heavy lifting, heavy carrying, and work at or above shoulder level." AR 322. Objectively, the doctor noted a "loss of left shoulder motion as recorded . . . has lost 25% of her preinjury left hand grip strength as a result of shoulder condition." AR 323. Dr. Alban opined Plaintiff's "*left shoulder* condition precludes heavy lifting, heavy carrying, heavy pushing, heavy pulling, and work at or above shoulder level." AR 323, emphasis added.

Dr. Alban's April 27, 2004, report makes no change to his earlier limitations concerning Plaintiff's left shoulder. AR 325-326.

On January 19, 2006, Dr. Alban reevaluated Plaintiff. AR 329-339. On this occasion his physical examination findings regarding Plaintiff's shoulder range of motion were as follows:

> Shoulder Motion:
> Forward Flexion: 170° right // 160°left with pain
> Abduction: 170° right // 150° left with pain
> Internal Rotation: 50° bilaterally
> External Rotation: 60° bilaterally
> Extension: 55°right // 45° left

AR 335. X-rays on this occasion revealed "[m]oderate degenerative change of the glenohumeral joint." AR 338. Dr. Alban made no change to his diagnosis regarding Plaintiff's shoulder and

11

made no change to his recommendation that she not work at or above shoulder level. AR 338-339.

The doctor's June 15, 2006, report apportioned the left shoulder disability in equal measure to Plaintiff's industrial injuries of December 1999 and April 2000, but again made no change to limitations he recommended after the original examination in 2003. AR 327-328.

In a third reevaluation of April 28, 2008, Dr. Alban's physical examination recorded the following range of motion findings:

```
Shoulder Motion:
    Forward Flexion:    175° right // 165° left
    Abduction:          175° right // 165° left
    Internal Rotation:  75° bilaterally
    External Rotation:  80° right // 60° left with pain radiating throughout
                        the left upper extremity
```

AR 349. Three views of Plaintiff's left shoulder again reflected "[m]oderate degenerative changes of the glenohumeral joint." AR 351. Dr. Alban's diagnoses included "[r]esiduals arthroscopic decompression, left shoulder." AR 351. He made no changes to the work restrictions previously identified, leaving in place his opinion that Plaintiff be restricted to no work at or above shoulder level. AR 352.

**B.    State Agency Physicians**

On November 13, 2008, state agency physician J. Bonner, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Bonner opined Plaintiff was capable of occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, sitting, standing or walking about six hours in an eight-hour workday, and unlimited pushing and pulling. AR 392. The doctor found Plaintiff has the ability to occasionally climb ramps and stairs, and to kneel, crawl and stoop, as well as the ability to frequently balance, kneel or crouch. She was never to climb ladders, ropes or scaffolds. AR 393. Dr. Bonner did not identify any manipulative, visual, communicative or environmental limitations. AR 391-395; *see also* AR

398 ["The claimant would be capable of light RFC, at least, with postural limitations.  10/04/05 TP note indicates that shoulder complaints resolved, would need no limitations"].

State agency physician G. W. Bugg, M.D., stated in a case analysis dated February 26, 2009, as follows: "MC Review.  Upon review of objective in file at initial, c/m should have been limited to sedentary work.  Error on face of evidence.  Propose re-opening and limited to sedentary work, due to objective findings."  AR 400.

### 4.    *Analysis*

Dr. Alban was, at a minimum, an examining physician.  His opinion conflicted with that of state agency physician Dr. Bonner.  As a result, ALJ Berry was required to provide specific and legitimate reasons for rejecting Dr. Alban's opinion.  Here, the ALJ did not disregard the whole of Dr. Alban's opinion as he expressly stated he afforded it "some weight as his conclusions are partially supported by the evidence as a whole."  AR 44.  Unfortunately, it is not clear what portions of Dr. Alban's opinion the ALJ found unsupportable.  Because Dr. Alban's examination, including diagnostic testing, revealed impairment regarding Plaintiff's left shoulder, the Court cannot state that the ALJ's findings are supported by substantial evidence and are free of legal error.

In *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1104 (C.D. Cal. 2002), the district court noted that "[w]orkers' compensation disability ratings are not controlling in disability cases decided under the Social Security Act, and the terms of art used in the California workers' compensation guidelines are not equivalent to Social Security disability terminology."  *Ibid.*  Nevertheless, an ALJ must evaluate medical opinions elicited in workers' compensation proceedings, and should explain his rejection of those opinions in accordance with the Social Security regulations.  *Id*. at 1105-1106.  Here, by failing to specifically explain what portions of Dr. Alban's opinion he found supportable versus those he identified as unsupportable, ALJ Berry has precluded meaningful judicial review.  *See e.g., Perez v. Chater*, 17 F.Supp.2d 1115, 1124-1125 (C.D. Cal. 1997) (holding that where the ALJ adopted one conclusion expressed by a workers'

compensation agreed medical examiner, the ALJ was required to explain why he did not accept that physician's opinion as to the claimant's functional limitations).

Dr. Alban's examinations and the diagnostic tests taken in conjunction with his examinations of Plaintiff reveal moderate degenerative changes in Plaintiff's left shoulder over a nearly five year period. AR 320, 338, 351. Moreover, Plaintiff's treating physician recorded Plaintiff's reports of left shoulder pain, and objective findings of spasm, tenderness and decreased range of motion, spanning the time period between August 2005 and May 2010. *See* AR 418-426, 442, 444-451, 453, 460, 475-486, 488-494. This information comports with Plaintiff's testimony at the administrative hearing: lifting and carrying cause pain, and reaching and grasping at shoulder level or above is difficult. *See* AR 63-65.

In this Court's view then, Dr. Alban's opinion regarding Plaintiff's left shoulder appears to be supported by objective medical evidence.

In contrast, Dr. Bonner's opinion is not based upon his own observations or examinations. Further, it does not appear that Dr. Bonner reviewed Dr. Alban's records, as neither Dr. Alban's name nor the dates of his examinations are referenced in Dr. Bonner's response in the case analysis. *See* AR 396-398. In fact, Dr. Bonner's opinion appears to be based largely on findings dating back to 2000, and does not reference any medical record dating beyond October 2005. Further, ALJ Berry's findings fail to address state agency physician Bugg's opinion that is plainly in conflict with Dr. Bonner's opinion.

Additionally, Dr. Alban is a board certified orthopedic surgeon. The opinion of a specialist about medical issues related to his or her area of specialty generally receives more weight than the opinions of non-specialist sources. 20 C.F.R. § 404.1527(c)(5).

The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). Here, ALJ Berry did not provide specific and legitimate

14

reasons, supported by substantial evidence in the record, to support his rejection of Dr. Alban's medical opinion.

Finally, this matter will be remanded to allow the ALJ an opportunity to specifically address Plaintiff's left shoulder degenerative disc disease and any limitation it may impose, including any limitation of overhead reaching. The ALJ should specifically address that limitation as reflected in Dr. Alban's reports, as well as in conjunction with the remainder of the medical evidence, as discussed herein.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Carolyn V. Pearson and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 4, 2012**                            /s/ **Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE